# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN PUGA CARRILLO,

    Plaintiff,

v.

WILLIAM MUNIZ,

    Defendant.

Case No. 16-cv-00565-JD

**ORDER RE HABEAS CORPUS PETITION AND CERTIFICATE OF APPEALABILITY**

Petitioner Benjamin Carrillo is a California state prisoner who seeks federal habeas relief under 28 U.S.C. § 2254(d). Dkt. No. 1. Carrillo and his co-defendant Valentin Rivas were convicted by a jury of the first degree murder of James Lopez, and of firing a gun into an occupied vehicle. Enhancement allegations against the defendants for gang activity and use of a firearm were found to be true. Carrillo and Rivas were each sentenced to prison for an aggregate term of 50 years to life.

Carrillo's sentence was affirmed on appeal. The state appellate court was forthright in recognizing that some mistakes happened during trial, but determined in a thorough and well-reasoned opinion that they did not result in an unfair result or unjust conviction. The general tenor of Carrillo's petition is that the appellate court drew the wrong legal conclusions after recognizing mistakes were made. In effect, Carrillo asks this Court to substitute its judgment for that of the appellate court. That is not consistent with the deferential standards mandated on habeas review, and so the petition is denied.

## BACKGROUND

The Court of Appeal provided a detailed and lengthy statement of the key facts of the murder and the trial court proceedings. *People v. Rivas*, 214 Cal. App. 4th 1410 (2013). Neither party disputes the court's statements, and they will not be presented *in toto* here.

United States District Court
Northern District of California

In summary, the homicide occurred in January 2009, when a minivan pulled alongside a car Lopez was driving. A passenger in the minivan shouted to the occupants "Where you from, fool?" and Lopez said "Norte" and threw up a gang sign. The passenger fired several gunshots into the car, killing Lopez but leaving the car's passenger, Ricardo E., unharmed. Ricardo E. was able to identify the shooter, Valentin Rivas, because he went to school with him. Carrillo was convicted as the driver of the minivan based on eyewitness testimony and other evidence adduced at trial.

In the published opinion denying Carrillo's direct appeal, the Court of Appeal noted "the trial was not free of problems" but found that none of Carrillo's contentions required a reversal of the judgement. The California Supreme Court denied Carrillo's petition for review. Dkt. No. 1-1 at 2. The state courts also denied Carrillo's petitions for habeas relief. *Id*. at 2-3.

In this federal habeas petition, Carrillo seeks relief on three grounds: (1) a jury instruction that he contends improperly invited the jury to consider gang evidence when deciding the identity of the minivan driver; (2) a jury instruction that he believes allowed a conviction on insufficient evidence; and (3) ineffective assistance of counsel. *See generally* Dkt. No. 1-1.

## GOVERNING STANDARDS

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Section 2254(d)(2) also sets "a daunting standard -- one that will be satisfied in relatively few cases. Nevertheless, the standard is not impossible to meet." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable. . . .").

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion from a lower court. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion of the California Court of Appeal for all the claims in the petition.

3

# DISCUSSION

## I. JURY INSTRUCTION RE GANG EVIDENCE

Carrillo asserts a due process violation and legal error in an instruction the trial court gave to the jury about certain gang evidence. During the trial proceedings, the parties and the trial court agreed that evidence relating to prior gang activity by Carrillo should be admitted for the limited purpose of proving the gang enhancements, and not as evidence that Carrillo murdered Lopez. *Rivas*, 214 Cal. App. 4th at 1420. During the reading of the jury instructions, however, the trial court *sua sponte* gave a modified version of CALCRIM Instruction No. 1403 that arguably allowed the jury to exceed that limitation. *Id*. The most similar gang activity that was admitted during trial was a May 2006 shooting from a vehicle in which Carrillo was involved. *Id*. at 1420. Defense counsel did not object when the modified instruction was given.

The Court of Appeal determined the trial court "erred under state law" in giving the instruction, but that the error was effectively harmless and caused no prejudice to Carrillo. *Id*. at 1421. That is because an abundance of eyewitness and other evidence admitted at trial eliminated any reasonable probability that the outcome of a guilty verdict would have been different if the error had not occurred. *Id*. at 1421-22. The Court of Appeal summarized this evidence in detail. *See id.* at 1414-19, 1421-22.

Carrillo has not shown a basis for habeas relief in these circumstances. To start, a challenge to a state jury instruction as an error under state law does not, as a general rule, state a claim for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998); *see also Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) ("[e]ven if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation.") (citation omitted). Nor does the fact that a jury instruction might have been inadequate by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction. *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 71-72).

When a state court finds an instruction error to be harmless, as is did here, its determination is reviewed under the deferential AEDPA standard. This means that relief is not available unless the state court's "*harmlessness determination itself* was unreasonable." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (italics in original)). In other words, a federal court may grant relief only if the state court's harmlessness determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). And if the federal court determines that the state court's harmless-error analysis was objectively unreasonable, it also must find that the error was prejudicial under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), before it can grant relief. *See Fry*, 551 U.S. at 119-20 (§ 2254(d)(1) did not displace *Brecht*).

Nothing in the record suggest that the Court of Appeal's conclusions for Instruction No. 1403 were objectively unreasonable or unjustified. The court engaged in a balanced discussion of the issue with appropriate citations to governing law and facts from the trial. Carrillo has not shown any infirmities in the analysis that would warrant overturning the court's findings here. Nor has he shown that an error was prejudicial to him under *Brecht*.

The due process claim is unavailing for similar reasons. As an initial matter, the Supreme Court has expressed "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *McGuire*, 502 U.S. at 75 n.5. In addition, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. Specifically, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

Carrillo does not show any fundamental unfairness arising out of the jury instruction error. An abundance of independent evidence was presented at trial that directly related to Carrillo's role in the crime, including the following facts. Within hours of the shooting, three eyewitnesses described the killers' minivan with descriptions that matched the van owned by Carrillo's mother -- a 1996 Dodge Caravan with a metallic greenish paint, or as the manufacturer named it, "light silver fern pearl." 6 RT 1530, 1549-50, 1552, 1594, 1597, 1606-08; 7 RT 1882, 1956, 1978, 1989-94. Three bystanders identified a photo of the Carrillo family van, agreeing that it looked like the van involved in the shooting, and one witness immediately identified the van in the photograph with certainty. 6 RT 1642; 7 RT 1874-75, 1959-60; 8 RT 2114-15, 2189, 2193. Although one witness initially identified Carrillo as the driver and Rivas as the shooter, 6 RT 1645, 1665, 1672; 7 RT 1873, 1893-94, she clarified the roles of the two in her trial testimony, 6 RT 1638-39, and did not depart from her identification of Carrillo and his co-defendant as occupants involved in the shooting. Witness Ricardo E., who was sitting in the passenger seat next to the murder victim, positively identified Rivas in the van as the shooter, and others identified Rivas and Carrillo as being in the van. *See, e.g.*, 6 RT 1539-41, 1599, 1618-19, 1645, 1665; 7 RT 1902-03, 1907, 1938-44, 1954-58. Cell phone records documented that Carrillo and Rivas called each other several times, including minutes before the shooting, in an area about 1.3 miles from the site of the shooting. 9 RT 2428-33. There were no calls to Carrillo or to Rivas during the time of the shooting. 9 RT 2434, 2443, 2460, 2481, 2515-16.

In light of this and other evidence that is entirely divorced from the erroneous jury instruction, it was not unreasonable for the Court of Appeal to conclude that the instruction did not skew the trial to the point of a due process violation. The court also carefully considered and rejected Carrillo's argument that his trial counsel was ineffective in failing to object to the modified instruction. *Rivas*, 214 Cal. App 4th at 1423-25. Carrillo challenges that conclusion here but in a cursory fashion unsupported by specific case citations or other materials. Dkt. No. 1-1 at 7-8. Looking more broadly, Carrillo has not shown that the Court of Appeal was in any way objectively unreasonable in finding that the failure to object did not prejudice Carrillo or so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as

having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

## II. JURY INSTRUCTION RE EXTRAJUDICIAL STATEMENTS

Carrillo also challenges the use of CALCRIM Instruction No. 359. which instructed that a defendant "may not be convicted of any crime based on his out-of-court statements alone," but that "[t]he identity of the person who committed the crimes and the degree of the crimes may be proved by the defendant's statements alone." *Rivas*, 214 Cal. App 4th at 1417-18. The instruction related to phone calls Carrillo made while in jail to his mother and others. Carrillo contends that the instruction was inherently confusing, impermissibly allowed the jury to find identity based solely on the calls, and allowed him to be convicted on insufficient evidence and less than proof beyond a reasonable doubt. *See* Dkt. No. 1-1 at 8-10.

The Court of Appeal again carefully evaluated this argument in the direct appeal, and rejected it. It noted that Instruction No. 359 posed some risks, and ought to be reconsidered as a general matter. *Rivas*, 214 Cal. App 4th at 1429. Even so, the court concluded under governing law, *see e.g., Middleton v. McNeil*, 541 U.S. 433, 436-37 (2004), that the use of the instruction did not deprive Carrillo of a fair trial or otherwise rise to the level of a due process violation. That is because other evidence "strongly pointed" to Carrillo's guilt, and the jury was told to consider all the evidence in the case and to convict only if the prosecution proved guilt beyond a reasonable doubt. *Rivas*, 214 Cal. App 4th at 1429-30. Even if an error attached to use of the instruction, the court also concluded that it was not prejudicial. *Id*. at 1430 n.10.

Carrillo again has not established that the court's conclusions were unreasonable. He says that the court used an "ambiguous citation" and that its findings went against the evidence, but he does not offer much more in the way of explanation or argument for either point. Dkt. No. 1-1 at 11-12. Similarly, he does not show that the harmless error conclusion was unsound.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Carrillo's final ground for relief is ineffective assistance of counsel. While Carrillo initially appeared to fault his attorney for a wide variety of alleged deficiencies, *see* Dkt. No. 1-1 at 13-26, he states in the traverse brief that the ineffective assistance claims "focus entirely" on how his trial counsel handled eyewitness evidence and related issues. Dkt. No. 17-1 at 2.

7

Specifically, he contends his lawyer performed at a substandard level by not calling an eyewitness identification expert and failing to investigate certain potential witnesses. Carrillo acknowledges that most of his ineffective assistance claims were raised not in the direct appeal but in state habeas proceedings, where they were summarily denied. *Id*. at 23. Consequently, the Court will do an independent review of these claims to determine if the state court denials were objectively unreasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

Under well-established Supreme Court precedent, a habeas petitioner alleging ineffective assistance of counsel must show that "counsel's performance was deficient," and that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, the petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless a petitioner makes both showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task" and establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) "is all the more difficult." *Id.* at 105 (internal quotation omitted). Prejudice may be presumed only when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659-60 (1984).

A difference of opinion over trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). A failure to make evidentiary objections does not

8

United States District Court
Northern District of California

1  render assistance ineffective unless challenged errors can be shown to have prejudiced the defense.

2  *United States v. Gibson*, 690 F.2d 697, 703-04 (9th Cir. 1982); *Lang v. Callahan*, 788 F.2d 1416,

3  1418 (9th Cir. 1986). The same is true for a failure to object to the prosecutor's closing remarks.

4  *Weygandt v. Ducharme*, 774 F.2d 1491, 1493 (9th Cir. 1985).

5  These well-established standards bar relief here for ineffective assistance. Carrillo has not

6  demonstrated that his trial counsel failed to provide "objectively reasonable advice under

7  prevailing professional norms," or otherwise handled the case in a sub-par manner.

8  *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004). For example, Carrillo devotes a

9  substantial portion of the traverse to recounting the ins and outs of police reports, witness

10 statements, and possible alternative ways of looking at the evidence. *See* Dkt. No. 17-1 at 3-31.

11 What is missing is a showing that he was prejudiced by the way his lawyer handled these matters.

12 He puts particular emphasis on the claim that certain witnesses who were not called or interviewed

13 might have helped his case, but he does not make these speculations concrete with specific

14 proffers or other showings, and they do not demonstrate a reasonable probability that the jury

15 would have reached a different verdict had the witnesses appeared at trial. *See Alcala v.*

16 *Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003). He also highlights trial counsel's failure to

17 retain and present an eyewitness expert. Our circuit has determined, however, that failing to call

18 an expert witness on the unreliability of eyewitness identification does not constitute ineffective

19 assistance because "skillful cross examination of eyewitnesses, coupled with appeals to the

20 experience and common sense of jurors, will sufficiently alert jurors to specific conditions that

21 render a particular eyewitness identification unreliable." *Howard v. Clark*, 608 F.3d 563, 574

22 (9th Cir. 2010) (internal quotation omitted).

23 On that point, Carrillo has not shown that defense counsel did not conduct an adequate

24 cross-examination or closing argument on eyewitness issues. To the contrary, Carrillo's lawyer

25 spent the bulk of his closing on attacking the reliability of the eyewitness testimony, and the

26 attorney for Rivas started his closing with argument about the unreliability of memory and

27 problems with mistaken identifications, before going on to parse the eyewitness testimony in

28 detail. *See* 11 RT 3091-96; 12 RT 3304-07 et seq. His observations were equally applicable to

9

the evidence against Carrillo.

Even assuming that his counsel did not perform flawlessly in handling the eyewitness issues, or in making certain objections during trial, the totality of the record does not indicate the kind of professional default that would warrant setting aside the judgment. Consequently, the state court summary denials of the ineffective assistance claims were not objectively unreasonable.

**IV. OVERALL SUFFICIENCY OF THE EVIDENCE**

While not crystal clear, Carrillo's petition can be read to claim that his conviction was not supported by sufficient evidence on the whole. To the extent he makes the argument, it is not supported by the record.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id*. at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 651, 655 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

10

Here, the Court of Appeal recounted in detail the evidence of Carrillo's guilt adduced at trial. Based on the court's findings, and the record as a whole and governing law, this Court cannot say that no reasonable jury would have convicted him.

## CONCLUSION AND CERTIFICATE OF APPEALABILITY

The petition is denied. A certificate of appealability is also denied. The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Carrillo has not shown a certificate is warranted, and it is not granted.

**IT IS SO ORDERED.**

Dated: November 29, 2018

JAMES DONATO
United States District Judge

11